UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES LEWIS,

                      Plaintiff,

  v.                                                             Case No. 23-cv-1210-pp

CO DENICE DOYING, *et al.*,

                      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Plaintiff James Lewis, who is incarcerated at Kettle Moraine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his complaint, dkt. no. 1.

**I.   Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On October 4, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $39.90. Dkt. No. 6. The court received that fee on October 23, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued CO Denice Doying, CO Briggs, Lieutenant Osgood, Security Director Pollard, Captain Campbell, Cory Sabish and K. Schmidt. Dkt. No. 1 at 1-2. He alleges that during all times relevant, Kettle Moraine Correctional Institution was under "Covid-19 protocol" that required staff and incarcerated individuals to "properly wear facemasks over their nose and mouth." Id. at ¶9. The plaintiff states that he had a cloth mask with elastic ear bands stretched out of place that did not allow the mask to stay in place. Id. at ¶10. On August 28, 2021, the plaintiff allegedly wrote to Sergeant Hendrix (not a defendant) requesting a new mask. Id. at ¶11.

3

The plaintiff alleges that on September 7, 2021 at about 6:15 a.m., while he was waiting to turn in his laundry, his mask would not stay in place and he had it hanging from one ear. Id. at ¶12. Defendant Briggs allegedly told several Black incarcerated individuals to put their face masks on properly and, as the plaintiff put his on correctly, he pointed to the white incarcerated persons who were wearing their masks improperly or not wearing them at all. Id. at ¶13. The plaintiff states that when "the sergeant"[1] came on the unit after breakfast, he told her how Briggs "targeted the blacks for not wearing masks but said nothing to the whites[.]" Id. at ¶15. While the plaintiff talked to the sergeant in her office, an incarcerated individual named Myers came to the office door and said, "If [the plaintiff] is talking about what happened in the laundry line, I can confirm it." Id. The plaintiff states that he told the sergeant that all she had to do was view the camera video from about 6:10 a.m. to 6:25 a.m., and she said she would do that. Id. at ¶16.

The plaintiff alleges that on the same day (September 7), he wrote an "inmate complaint" about Briggs telling Black incarcerated individuals to put their face masks on properly but not saying anything to the white incarcerated persons who didn't have their face masks on properly. Id. at ¶18. Two days later, "correctional officers and supervisors" allegedly came to the plaintiff's cell door and took him to Unit 14, also known as "segregation" or "the hole." Id. at ¶19. He states that he was placed on temporary lockup (TLU) for "lying on

---

[1] Although not entirely clear, it appears that this sergeant is defendant Sabish.

staff." Id. at ¶20. The plaintiff alleges that he gave a statement in which he denied lying about staff. Id. at ¶21.

The plaintiff alleges that on September 15, 2021, defendant Doying brought the plaintiff a copy of a conduct report that defendant Sabish had written. Id. at ¶22. The plaintiff alleges that Doying offered him thirty days in segregation for "lying on an employee[]" but the plaintiff refused the offer and requested a hearing. Id. at ¶23. Doying allegedly told the plaintiff that he would have to wait twenty-one days for a hearing but that if he accepted the offer of thirty days, he would have to serve only fifteen days. Id. at ¶24. The plaintiff says that he repeated that he was not guilty, to which Doying responded, "We find everyone guilty." Id. at ¶25.

The plaintiff states that the provision of the Wisconsin Administrative Code that prohibits lying about staff (§DOC 303.32) contains an exception for statements made within the Wisconsin Department of Corrections' (DOC) Inmate Complaint Review System (ICRS). Id. at ¶¶26-27. The plaintiff alleges that when defendant Captain Campbell did rounds on the segregation unit, the plaintiff showed Campbell his conduct report "that clearly states the information was gathered from his inmate complaint." Id. at ¶29. The plaintiff allegedly showed Campbell the "303.32 policy that states an inmate is only guilty of lying about staff for any oral or written statement made outside the ICRS whereas [the plaintiff's] statement was made within the ICRS and [the plaintiff] therefore could not be charged with lying about an employee." Id. Campbell allegedly said that the plaintiff was free to make that argument at

5

this hearing, to which the plaintiff replied that it was not an argument but a fact, and that it was within Campbell's authority to follow policy. Id. at ¶30. The plaintiff states that Campbell walked away. Id.

The plaintiff alleges that defendants Osgood and Doying were the hearing officers at his September 30, 2021 disciplinary hearing. Id. at ¶32. The plaintiff's statement to the hearing officers allegedly repeated the actions of Briggs and pointed out that DOC 303.32 did not allow for him to be found guilty of lying about an employee because his statement was made within the ICRS. Id. at ¶33. Two incarcerated individuals were allegedly called as witnesses for the plaintiff. Id. at ¶¶34-35. The plaintiff states that he was then asked to leave the room to allow Doying and Osgood to view the video footage and that when he was called back into the room, he was told that the video supported his allegations so he would be found not guilty of lying about an employee. Id. at ¶36. The plaintiff says he was told he would be keeping his job. Id. at ¶37. He alleges that he also was told that he would receive a conduct report finding him of guilty for disobeying orders because he admitted he violated the policy that states that incarcerated individuals must wear their masks at all times when out of their cells. Id. at ¶¶38-39. The plaintiff states that he pointed out that his two witnesses had admitted they were not wearing their masks properly and that the video showed white individuals who were not wearing their masks correctly, and he asked if those individuals also would get conduct reports. Id. at ¶40. The plaintiff states that he was told to go to his cell and get his things together so that he could go back to general population. Id.

The plaintiff alleges that he filed a complaint (KMCI-2021-1475) alleging that defendant Sabish retaliated against him for filing the complaint against defendant Briggs (KMCI-2021-13597). Id. at ¶41. Defendant Schmidt allegedly rejected the complaint as being previously addressed, stating that the plaintiff actually was appealing the complaint against Briggs (13597) because he was not satisfied with that decision. Id. at ¶42. The plaintiff alleges that he wrote a third complaint (KMCI-2021-14300) against Schmidt stating that Schmidt's poor judgment had allowed Sabish to retaliate against the plaintiff. Id. at ¶44. The complaint allegedly was rejected as having been previously addressed. Id.

The plaintiff alleges that when he wrote the complaint about defendant Briggs, he stated on the complaint that he had talked to defendant Sabish numerous times about Briggs' favoritism towards whites over Blacks and that Sabish would always say, "I'll talk to her [Briggs]." Id. at ¶45. The plaintiff states that in finding him not guilty about lying about an employee, the hearing officers stated: "[The plaintiff] is not guilty of 303.32 as stated in the conduct report due to reviewing the video evidence and witnessing other inmates in the immediate area not wearing their masks appropriately." Id. at ¶46. He says the video contradicts what Sabish and Briggs said in the conduct report—that the plaintiff "was the only inmate not wearing his mask correctly." Id. at ¶47.

The plaintiff alleges that in October 2021, Sabish came on the plaintiff's unit (Unit 15) and noticed the plaintiff working a unit job. Id. at ¶49. About one week later, the plaintiff allegedly was terminated from his job for having

7

Case 2:23-cv-01210-PP   Filed 03/11/24   Page 7 of 13   Document 7

received a major conduct report. Id. The plaintiff alleges that the complaint examiner found that he should not have been removed from his job. Id. at ¶51.

The plaintiff alleges that when defendants Osgood and Doying found him guilty of disobeying orders, he was given sixteen days' room confinement. Id. at ¶52. He says he appealed to the warden, pointing out that other incarcerated individuals had admitted to not wearing their mask correctly and were not given conduct reports, as well as the fact that Osgood and Doying had witnessed others on the video not wearing their masks correctly and none of them were given conduct reports. Id. The plaintiff states that on October 19, 2021, three days after he completed the sixteen days room confinement, the warden dismissed the conduct report. Id. at ¶53.

The plaintiff claims that the defendants have retaliated against him and discriminated against him violation of the United States Constitution. Id. at ¶¶54-61. He also claims that his rights under Wisconsin state law regarding defamation of character have been violated. Id. at ¶63. For relief, the plaintiff seeks compensatory and punitive damages. Id. at p. 11.

C. Analysis

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race ... ethnicity, sex, religion, or other proscribed factor . . . ." Id. at 719–20 (citing

8

Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016)); see also David K. v. Lane, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting that discrimination must be intentional, purposeful, or have a discriminatory motive). The plaintiff may proceed on an equal protection claim against defendant Briggs in her individual capacity based on allegations that she discriminated against him by enforcing the prison's mask policy against him and other Black incarcerated individuals but not against white incarcerated individuals. The plaintiff also may proceed on equal protection claims against defendants Sabish, Osgood and Doying in their individual capacities for allegedly giving him a conduct report and/or finding him guilty of disobeying orders for not properly wearing his mask, but failing to enforce the policy against white incarcerated individuals who did not properly wear their masks.

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff may proceed on a retaliation claim against defendants Briggs and Sabish in their individual capacities based on allegations that they issued him a conduct report in retaliation for the plaintiff's complaint against Briggs and statements in the complaint that he had previously complained to Sabish about Briggs's discriminatory conduct. The plaintiff also may proceed on a

9

retaliation claim against Sabish in his individual capacity for allegedly having the plaintiff fired from his job based on the plaintiff's complaints against Briggs and Sabish.

The plaintiff claims that defendant Sabish violated Wisconsin state law against defamation of character because his "lie to the ICE would have forever prevented [the plaintiff] from being credible in any future complaints against staff had he been successful." Dkt. No. 1 at ¶63. Under Wisconsin law, defamation claims require that "the particular words complained of shall be set forth in the complaint." Wis. Stat. §802.03; see also Schindler v. Seiler, 474 F.3d 1008, 1010 (7th Cir. 2007). The plaintiff may proceed on a claim for defamation of character against Sabish and the court will exercise supplemental jurisdiction over that state law claim. See 28 U.S.C. §1367.

The plaintiff may not proceed on any other claims. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dep't of Nat. Resources, 347 F.3d 1014, 1039 (7th Cir. 2003). Regarding supervisors, the personal responsibility requirement is satisfied if the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent. Id. In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)).

The plaintiff does not state a claim against defendant Pollard based on allegations that he allowed Sabish and Briggs to retaliate against the plaintiff based solely on the fact that he was the security director. The plaintiff may not proceed against Schmidt based on allegations that he allowed Sabish and/or Briggs to retaliate against the plaintiff by sharing confidential complaints with Sabish. The plaintiff has not alleged that Schmidt had personal involvement in any alleged constitutional violation. The plaintiff does not state a claim against Campbell for allegedly failing to remove the plaintiff from segregation when the plaintiff provided him with his conduct report. He has not alleged that Campbell was personally involved in the discrimination or retaliation. Moreover, the plaintiff followed Campbell's suggestion of raising his issue at his hearing and he was found not guilty of that charge. The court will dismiss defendants Pollard, Schmidt and Campbell.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **ORDERS** that defendants Pollard, Campbell and Schmidt are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Doying, Briggs, Osgood and Sabish. Under the informal service

agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$173.14** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Kettle Moraine Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 11th day of March, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**