UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES LEWIS,

                              Plaintiff,

        v.                                          Case No. 23-cv-1210-pp

CO DENICE DOYING, *et al.*,

                              Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 33), GRANTING
PLAINTIFF'S MOTION TO IDENTIFY REPRESENTATIVE OF ESTATE OF
ALLISON BRIGGS AND DENYING MOTION TO REMOVE ALLISON BRIGGS
FROM MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 49)**

        Plaintiff James Lewis, who is incarcerated at Kettle Moraine Correctional

Institution and is representing himself, filed this case alleging that the

defendants violated his civil rights. Dkt. No. 1. The court screened the

complaint and allowed the plaintiff to proceed on the following claims: (1) an

equal protection claim against defendant Allison Briggs based on allegations

that she discriminated against him by enforcing the prison's mask policy

against him and other Black incarcerated individuals but not against White

incarcerated individuals; (2) equal protection claims against defendants Cory

Sabish, Christopher Osgood and Denice Doying for allegedly giving the plaintiff

a conduct report and/or finding him guilty of disobeying orders for not properly

wearing his mask, but failing to enforce the policy against White incarcerated

individuals who did not properly wear their masks; (3) retaliation claims

against Briggs and Sabish based on allegations that they issued the plaintiff

the conduct report in retaliation for his complaint against Briggs and statements in the complaint that he had previously complained to Sabish about Briggs's discriminatory conduct; (4) a retaliation claim against Sabish for allegedly having the plaintiff fired from his job based on his complaints against Briggs and Sabish; and (5) a Wisconsin state law claim for defamation of character against Sabish. Dkt. No. 7 at 9-10. This order addresses the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 33. The order also addresses the plaintiff's motion to identify the representative of the Estate of Allison Briggs and to remove Allison Briggs from the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 49.

## I. Motion to Identify Representative of the Estate of Allison Briggs and to Remove Allison Briggs from the Defendants' Motion for Partial Summary Judgment on Exhaustion Grounds, Dkt. No. 49

The plaintiff's motion contains two requests. First, he asks to identify the personal representative of the Estate of Allison Briggs as Attorney David A. Van de Water.[1] Dkt. No. 49 at 1. The plaintiff states that on December 12, 2024, he spoke to Attorney Van de Water's paralegal, who verified that Attorney Van de Water represents the Estate of Allison Briggs. Id. The plaintiff also reports that he sent a discovery request to the defendants, asking them to provide the name

---

[1] On December 4, 2024, the court granted the plaintiff's "motion to amend the named defendant" in which he sought to substitute the proper party for Allison Briggs, the deceased defendant. Dkt. No. 48. The court ordered the plaintiff to identify the representative for the Estate of Briggs by January 17, 2025. Id. at 13. The court said that it appeared from Wisconsin online public court records that Attorney David A. Van de Water had been named as personal representative for the Estate of Allison Briggs. Id. at 10 n.5.

of the representative in the hope of "getting something in writing." Id. at 2. He says that, to date, he has not received written notification from Attorney Van de Water or the defendants. Id. The defendants do not object to the plaintiff's motion. See Dkt. No. 52. The court will grant that portion of the motion and will substitute Attorney David A. Van de Water, personal representative for the Estate of Allison Briggs, for Briggs. The court will order service of the complaint (Dkt. No. 1), the screening order (Dkt. No. 7), the suggestion of death as to Allison Briggs (Dkt. No. 11), the plaintiff's motion to substitute (Dkt. No. 13), the court's order granting the motion to substitute (Dkt. No. 48) and this order on Attorney Van de Water. See Fed. R. Civ. P. 25(a)(3).

The plaintiff's second request is that Allison Briggs be removed from the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 49 at 2. He states that the defendants' motion includes an argument that the plaintiff failed to exhaust his administrative remedies regarding his claim against Briggs for issuing the plaintiff a conduct report in retaliation for filing a discrimination complaint against her. Id. The plaintiff contends that the court should not consider the defendants' exhaustion argument as it relates to Briggs because counsel for the defendants does not represent the Estate of Allison Briggs. Id.

The defendants respond that the court should not remove Briggs from their motion. Dkt. No. 52 at 1-2. According to the defendants, they properly represented Briggs in the motion because they previously accepted service on

behal of Briggs. Id. at 2. The defendants state that they represented Briggs when they filed the motion for partial summary judgment. Id.

On April 26, 2024, the defendants filed the suggestion of death regarding Briggs, which states that she died on April 9, 2024. Dkt. No. 11. About two weeks later, on May 9, 2024, the plaintiff timely filed a motion to "amend the named defendants," in which he sought to substitute the proper party for Briggs under Fed. R. Civ. P. 25(a). Dkt. No. 13. The defendants subsequently stated that they might enter into a stipulation with the plaintiff, agreeing to pay any damages that may be awarded in the case against the deceased defendant rather than substituting the decedent's successor.[2] Dkt. No. 14. The parties ultimately did not reach agreement and on December 4, 2024, the court granted the plaintiff's motion to amend named defendants in which he sought to substitute the proper party for Briggs. Dkt. No. 48.

The defendants filed their motion for partial summary judgment on exhaustion grounds on August 19, 2024, almost four months after they filed the suggestion of death as to Briggs. Dkt. No. 33. When the defendants filed their summary judgment motion, it appears that they still believed that the parties might reach an agreement to proceed without the need to substitute a successor for Briggs; as stated, however, the parties were not able to agree. Allison Briggs ceased to be a party in this case when she died. See Atkins v.

_____

[2] Other courts have permitted the Wisconsin Department of Justice to enter into such a stipulation with a party. See Henderson v. Haines, Case No. 21-CV-346, 2023 WL 4174474, at *3 (W.D. Wis. June 26, 2023).

4

<u>City of Chicago</u>, 547 F.3d 869, 872 (7th Cir. 2008) (decedent's lawyer may not file motion for substitution in his own name because he no longer has a client). But the defendants' motion for partial summary judgment on exhaustion grounds is fully briefed and, because consideration of that motion demonstrates that the plaintiff did not exhaust his retaliation claim against Briggs, the court will dismiss that claim. <u>See</u> <u>Turley v. Gaetz</u>, 625 F.3d 1005, 1013 (7th Cir. 2010) (district court may dismiss complaint where existence of valid affirmative defense, such as failure to exhaust, is plain from the face of the complaint); <u>see also</u> <u>Walker v. Thompson</u>, 288 F.3d 1005, 1009 (7th Cir. 2002); 42 U.S.C. §1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted). It would be inefficient and futile to allow the plaintiff's retaliation claim against Briggs/Estate of Briggs to proceed when the plaintiff did not exhaust his administrative remedies as to that claim. The court will deny the plaintiff's motion to remove Briggs from the defendants' motion for summary judgment.

## II.     **Defendants' Motion for Partial Summary Judgment, Dkt. No. 33**

### A.     <u>Facts</u>

During the events described in the complaint, the plaintiff was incarcerated at Kettle Moraine Correctional Institution and the defendants worked there. Dkt. No. 35 at ¶¶1-2. The plaintiff filed four administrative

complaints potentially related to the allegations on which the court allowed him to proceed. Dkt. No. 35 at ¶4.

1. *KMCI-2021-13597*

The plaintiff submitted complaint KMCI-2021-13597, which institution complaint examiner (ICE) Schmidt received on September 8, 2021. Dkt. No. 35 at ¶5. The complaint said that on September 7, 2021, Briggs showed favoritism for White incarcerated individuals over those of color when she asked the plaintiff and other Black incarcerated persons to put on their face masks even though other White individuals were not wearing their face masks properly. Id. at ¶6. At the bottom of the complaint form, the plaintiff wrote, "CHECK THE CAMERA FROM 6:13-6:25AM." Dkt. No. 42 at ¶2.

ICE Schmidt contacted Sabish to review the complaint. Dkt. No. 35 at ¶7. Schmidt recommended dismissal of the complaint, stating in part that Sabish had reviewed camera footage from September 7, 2021 and that everyone appeared to be wearing their masks appropriately except the plaintiff. Dkt. No. 36-2 at 2. Schmidt also said that the plaintiff did not provide credible evidence or witnesses to support his allegations. Id.

The plaintiff appealed the dismissal of the complaint and on October 4, 2021, the corrections complaint examiner dismissed the appeal. Dkt. No. 35 at ¶¶10-11. The Office of the Secretary affirmed that decision on October 20, 2021, pointing out that Warden Jon Noble was aware of the concern raised and on October 19, 2021 had dismissed the conduct report charge of lying about an

6

employee under Wis. Admin. Code §DOC 303.89, Warden-initiated review. Id. at ¶12.

### 2. *Conduct Report 188959*

On September 14, 2021, Sabish issued the plaintiff Conduct Report 188959 for lying about an employee. Dkt. No. 35 at ¶13. In the conduct report, Sabish wrote:

> On September 9th, I received information from an ICE follow up about [the plaintiff] feeling that there is favoritism of whites on the unit over color. [The plaintiff] provided a specific time when this allegedly happened which is September 7th, 2021 between 6:15 am to 6:25 am. [The plaintiff] stated in his ICE that CO Briggs repeatedly told blacks, including him that they need to wear there [sic] masks properly. [The plaintiff] said in his ICE that there were no white persons wearing their masks properly.
>
> Upon reviewing the cameras at the designated time . . . I saw everyone wearing a mask except [the plaintiff], who had his mask hanging from one of his ears. As he approached CO Briggs he can be seen putting his mask on. Officer Briggs stated that she only addressed [the plaintiff] as he was the only PIOC not wearing a mask. PIOCs are to wear masks when inside a building when they are out of their cell.
>
> Based on the information and video reviewed [the plaintiff] is lying about an employee which can affect not only the employee's credibility but also their integrity.

Id. at ¶14. On September 15, 2021, Security Director Thomas Pollard signed off on the conduct report and Doying delivered it to the plaintiff. Id. at ¶15.

The plaintiff challenged the conduct report. Dkt. No. 35 at ¶16. On September 30, 2021, Osgood conducted the hearing of the contested conduct report. Id. at ¶17. The disciplinary hearing record contains the following summary of the plaintiff's statement at the hearing:

7

I never said that no whites were wearing the mask, she was telling the blacks to wear their masks properly but [not] the whites. When I approached [Inmate] Schmalling, I point[ed] out that he wasn't wearing his mask properly. Inmate Campbell wasn't wearing her [sic] mask properly and that was my statement. To be accused of lying I would have to make a false statement and that's why I wanted the camera footage to be viewed. My statement was made inside the ICE process so I can't be charged with 303.32 because my comment was made within this complaint.

Id. at ¶18; Dkt. No. 40 at ¶18. According to the plaintiff, the "summary" from the disciplinary hearing record left out key points that he made to the committee. Dkt. No. 42 at ¶5. The plaintiff states that when the committee asked him if he wanted to make a statement, the first thing he said was that Briggs was angry because he had written the complaint against her, and that Sabish was angry because the plaintiff had written in the complaint that he had told Sabish numerous times about Briggs showing favoritism of Whites over Blacks. Id. at ¶6. The plaintiff says that he told the committee that sending him to the hole was Briggs and Sabish's way of getting back at him. Id. at ¶7. The plaintiff told the committee that White incarcerated individuals were not wearing their masks properly. Id. at ¶9.

At the hearing, the plaintiff told Osgood that this was the first time he had written a complaint about Briggs showing favoritism. Dkt. No. 35 at ¶19. The plaintiff also told Osgood that he had not previously received a conduct report for not wearing his mask outside of his cell and that Briggs never had addressed the plaintiff about wearing his mask properly before this incident. Id. at ¶20. The plaintiff told Osgood that when Briggs addressed the plaintiff, the plaintiff was wearing his mask hanging off one ear. Id. at ¶21.

8

After reviewing the evidence, Osgood charged the plaintiff with disobeying orders instead of lying, and the plaintiff was found guilty of disobeying orders. Dkt. No. 35 at ¶22. Osgood wrote in his decision that the plaintiff was not guilty of the original charge of lying about an employee "due to reviewing the video evidence and witnessing other inmates in the immediate area not wearing their masks appropriately." Dkt. No. 42 at ¶1.

According to the defendants, the plaintiff was required to appeal to Warden Noble to exhaust his administrative remedies in challenging a conduct report under Wis. Admin. Code §DOC 303.82 (Appeal of contested major or minor disposition or contested major waiver). Dkt. No. 35 at ¶24. According to the plaintiff, he had no grounds for appealing the decision. Dkt. No. 40 at ¶24.

An appeal of a contested hearing must be made on form DOC-0091-Appeal of Contested Hearing, which states that an incarcerated individual may appeal: (1) findings of guilt; (2) the decision on disposition; and (3) alleged harmful procedural error. Dkt. No. 42 at ¶18. According to the plaintiff, he "had no merit for an appeal his only remedy was through the Inmate Complaint Review System." Id. at ¶25. He states that he could not appeal the finding of guilt because he was not wearing his mask properly, so he was guilty of disobeying orders. Id. at ¶21. The plaintiff also states that he had no grounds to appeal the decision on disposition because the disposition he received (sixteen days room confinement) was well within the maximum time he could have received for the violation, which was 360 days disciplinary separation. Id. at ¶¶22-23. And he asserts that because no procedural error was made, he

9

could not appeal on the ground of alleged harmful procedural error. Id. at ¶24. The defendants state that the plaintiff could have appealed the decision and alleged that the violation should not be enforced because the conduct report was based on discriminatory or retaliatory reasons. Dkt. No. 46 at ¶¶21, 23, 24, 25.

The plaintiff had ten days from the September 30, 2021 receipt of the hearing decision to appeal it under Wis. Admin. Code §DOC 303.82(1). Dkt. No. 35 at ¶25. He did not appeal the decision. Id. at ¶26.

On September 30, 2021, the plaintiff was transferred from segregation to a housing unit. Dkt. No. 42 at ¶26. According to the plaintiff, he wrote to the warden explaining how he had written a complaint against Briggs for treating Black incarcerated individuals, including himself, differently from White incarcerated individuals. Id. at ¶27. The plaintiff explained how he had called two White incarcerated individuals, Myers and Schmalling, as witnesses at his hearing and that they admitted to not wearing their masks properly and Briggs not saying anything to them. Id. at ¶28. The plaintiff explained how, after hearing their testimony and viewing the video, the hearing officers found him not guilty of lying about an employee, but found him guilty of disobeying orders because the plaintiff admitted to not wearing his mask properly. Id. at ¶29. The plaintiff told the warden that he asked the hearing officers if Myers and Schmalling, as well as the other incarcerated individuals seen on the video, were also being given sixteen days room confinement, and was told no. Id. at ¶30. The plaintiff pointed out to the warden that the only difference between

him and the others was that the plaintiff is Black, and the other incarcerated individuals are White. Id. at ¶31.

On October 19, 2021, Warden Noble reversed the guilty decision on Conduct Report 188959 and dismissed the conduct report. Dkt. No. 35 at ¶27.

### 3. *Complaint KMCI-2021-14300*

The plaintiff filed complaint KMCI-2021-14300, which the ICE acknowledged on September 20, 2021, alleging that ICE Schmidt displayed poor judgment by allowing Sabish to investigate KMCI-2021-13597. Dkt. No. 35 at ¶¶28-29. The plaintiff stated that this poor judgment resulted in Sabish retaliating against him. Id. ¶29. In the complaint form, the plaintiff provided the following "details surrounding this complaint":

> This is NOT about the CR I received. This is NOT about CPS Sabish. That will come AFTER the C.R. hearing is complete. They are only mentioned as "Details Surrounding this Complaint".

> I wrote complaint KMCI-2021-13597 about C.O. Briggs. When asked who I attempted to resolve the issue with I wrote CPS Sabish had been informed numerous times but would always respond that he would talk to her. Knowing Sabish was made aware of Briggs' actions numerous times, and his failure to respond appropriately, ICE K. Schmidt turned the duties of investigating the video over to Sabish who retaliated by immediately having me placed in seg for allegedly violating 303.32 lying about an employee in an ICE; when 303.32 clearly states you can only be guilty for written/oral statement OUTSIDE the ICRS. ICE Schmidt's poor decision making allowed Sabish to retaliate in such a way as to cause me undue and unnecessary hardship . . .. All this could have been avoided but for the poor judgment of I.C.E. K. Schmidt.

Dtk. No. 36-3 at 11, 13.

The ICE rejected KMCI-2021-14300 on September 21, 2021 because the plaintiff's issue previously had been addressed with prior use of the Inmate

Complaint Review System (ICRS). Id. at ¶30. The plaintiff appealed, and on October 7, 2021, Noble rejected the plaintiff's appeal as untimely.[3] Id. at ¶¶31-32.

In complaint KMCI-2021-13597, the plaintiff did not mention ICE Schmidt. Dkt. No. 42 at ¶42. There was no way to know that Schmidt would give his complaint to Sabish.[4] Id.

### 4. *Complaint KMCI-2021-14750*

The plaintiff filed complaint KMCI-2021-14750, which the ICE acknowledged on September 27, 2021, complaining that Sabish had retaliated against him for writing KMCI-2021-13597. Dkt. No. 35 at ¶¶33-34. The complaint states in part:

> This complaint is ABOUT RETALIATION!!! I only mention the conduct report as "Details Surrounding this Complaint." I will write a complaint on the C.R. AFTER the hearing.
>
> After I wrote complaint KMCI-2021-13597 against C.O Briggs, CPS Sabish retaliated by having me put in seg for a violation he knew-or should have known-was not a violation. He accused me of violating DOC 303.32 Lying about an Employee, when that code says: Any inmate who makes a false written or oral statement outside the ICRS is guilty of lying about an employee. Sabish wrote in the C.R. that he got my statement directly from an I.C.E. making it within the ICRS and not a 303.32 violation. Sabish knew I would have to remain in seg for approximately 3 weeks before I would have a hearing to discourage further complaints against COs.

---

[3] The plaintiff disputes that his appeal was untimely. Dkt. No. 40 at ¶31. According to the plaintiff, he mailed his appeal on September 28, 2021, but the warden did not receive it until October 5, 2021. Id.; Dkt. No. 42 at ¶35.

[4] The defendants do not dispute this fact, but they say that the proper procedure for the plaintiff to challenge the handling of complaint KMCI-2021-13597 was to appeal the decision made in that complaint. Dkt. No. 46 at ¶42.

Dkt. No. 36-4 at 9.

The ICE rejected KMCI-2021-14750 because the plaintiff's issue previously had been addressed with prior use of the Inmate Complaint Review System through KMCI-2021-13597. Id. On October 4, 2021, the plaintiff timely appealed the ICE's rejection of KMCI-2021-14750 and Noble decided that the complaint was appropriately rejected by the ICE. Id. at ¶36, 37.

In complaint KCMI-2021-13597, the only time the plaintiff mentioned Sabish was where the complaint asked the plaintiff with whom he had attempted to resolve his ONE issue, and the plaintiff "wrote: CPS Sabish has been told numerous times and his only response has been 'I'll talk to her.'" Dkt. No. 42 at ¶45. At the time the plaintiff wrote complaint KCMI-2021-13597 he had no way of knowing that the ICE would turn his complaint over to Sabish and that Sabish would retaliate against him. Id. at ¶46.

In rejecting complaints KMCI-2021-14300 and KMCI-2021-14750 the ICE wrote the same thing:

> KMCI-2021-13597 has not been exhausted through the ICRS. A complaint which would require redress, or the evaluation of a prior complaint, including the actions of the ICE who processed that complaint, would be addressing it again. The issue raised in this complaint has been addressed through the inmate's prior use of the ICRS.

Dkt. No. 42 at ¶47. In complaints KMCI-2021-14300 and KMCI-2021-14750, the plaintiff informed the ICE that he would be writing more complaints after his hearing. Id. at ¶48.

On September 28, 2021, ICE Schmidt told the plaintiff that complaint KMCI-2021-14750 had been rejected and that he did not have to keep writing

13

complaints about the same issue because they would be rejected. Dkt. No. 42 at ¶49. The plaintiff explained that he was writing complaints about the different things that were done to him, and that they were not the same issue. Id. at ¶50. Schmidt informed the plaintiff that any complaint he wanted to write that had anything to do with his original complaint about Briggs would be rejected as previously addressed. Id. at ¶51. The plaintiff told Schmidt that he had to exhaust his remedies on each issue, but Schmidt said that once the plaintiff exhausted the complaint on the issue concerning Briggs, his issues determined to be previously addressed also would be fully exhausted.[5] Id. at ¶52.

### 5. Complaint KMCI-2021-17063

The plaintiff filed complaint KMCI-2021-17063, which the ICE acknowledged on November 8, 2021. Dkt. No. 35 at ¶38. In the complaint, the plaintiff said that his work pay was incorrect. Id. at ¶39. The ICE affirmed KMCI-2021-17063 on November 16, 2021, and recommended that the plaintiff be reimbursed. Id. at ¶40.

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[5] The defendants dispute this "confusing interpretation" of Schmidt's instructions. Dkt. No. 46 at ¶52. The defendants state that the plaintiff had the opportunity to address all his concerns pertaining to the issue raised in complaint KCMI-2021-13597 through the ICRS appeal process. Id. They also state that the plaintiff had the opportunity to address his concerns pertaining to his conduct report through the conduct report appeal process. Id.

judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C.    Discussion

The defendants contend that the plaintiff has not exhausted administrative remedies as to the following claims: (1) his equal protection claims against Sabish, Osgood and Doying for allegedly giving the plaintiff a conduct report and/or finding him guilty of disobeying orders for not properly

15

wearing his mask, but failing to enforce the policy against White incarcerated individuals who did not properly wear their masks; (2) his retaliation claims against defendants Briggs and Sabish based on allegations that they issued the plaintiff a conduct report in retaliation for his complaint against Briggs and statements in the complaint that he previously had complained to Sabish about Briggs's discriminatory conduct; and (3) his retaliation claim against Sabish for allegedly having the plaintiff fired from his job based on his complaints against Briggs and Sabish.[6] Dkt. No. 34 at 3-5. The defendants contend that the plaintiff did not exhaust his retaliation or discrimination claims related to conduct report 188959 because he did not appeal the conduct report, as required under §DOC 303.82. Id. at 9. The defendants contend that complaint KMCI-2021-17063 did not exhaust the plaintiff's retaliation claim against Sabish for allegedly firing him from his job because the complaint does not state that he was removed from his job for engaging in protected activity. Id. at 11-12.

The plaintiff responds that he exhausted all administrative remedies available to him. Dkt. No. 39 at 6. He states that for his discrimination claims against Doying, Sabish and Osgood, and his retaliation claims against Briggs and Sabish, he could not appeal the conduct report because he was guilty of the mask violation, and he could not file a grievance under the ICRS because

---

[6] The defendants have not moved for summary judgment on the plaintiff's equal protection claim against Briggs for allegedly discriminating against him for enforcing the mask policy against him but not against White incarcerated individuals or on the plaintiff's state law defamation of character claim against Sabish. Dkt. No. 34 at 3, 5.

his claim previously had been addressed through complaint KMCI-2021-13597. Id. at 4. The plaintiff also states that for his retaliation claim against Sabish for having the plaintiff fired from his job, the claim previously had been addressed through KMCI-2021-13597. Id.

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden

of proving that the plaintiff failed to exhaust. <u>Pavey v. Conley</u>, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007)).

The Inmate Complaint Review System in the Wisconsin prisons is the administrative remedy available to individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated individual may commence a civil lawsuit, he must exhaust all administrative remedies the Department of Corrections (DOC) "has promulgated by rule." Wis. Admin. Code §DOC 310.05. The ICRS is available for individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the institution complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the corrections complaint examiner (CCE). Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The secretary affirms or dismisses the CCE's recommendation, or

18

returns the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

An incarcerated person "may raise issues, including civil rights claims, through the ICRS regarding . . . disciplinary actions . . . only after exhausting . . . [t]he disciplinary appeal process under ch. DOC 303." Wis. Admin. Code §DOC 310.06(2). Under the disciplinary appeal process, an incarcerated individual may appeal a disciplinary decision, including procedural errors, to the warden within ten days after receiving a copy of the decision. Wis. Admin. Code §DOC 303.82(1). The warden's decision is final regarding the sufficiency of the evidence. Wis. Admin. Code §DOC 303.82(4). An incarcerated individual may appeal claims of procedural errors through the ICRS. Id.

The defendants contend that the plaintiff did not exhaust his equal protection claims against Sabish, Osgood and Doying for allegedly discriminating against him by giving him Conduct Report 188959 or finding him guilty because the plaintiff did not appeal the decision on the conduct report. They also contend that the plaintiff did not exhaust his retaliation claims against Briggs and Sabish for allegedly issuing him the conduct report in retaliation for his protected activity because the plaintiff did not appeal the decision on the conduct report. It is undisputed that the plaintiff did not appeal the decision on Conduct Report 188959. He contends that he had no avenue for appeal because he admitted he was guilty of the offense, the disposition was lower than the maximum and the procedure was fair. But under §DOC 303.82, an incarcerated individual *must* appeal a conduct report to exhaust his

administrative remedies. The plaintiff may believe that it would have been futile to do so, but he was required to try. If the plaintiff had filed an appeal raising his concern that the conduct report was not justified because it was discriminatory and/or retaliatory, it is possible that reviewing authorities would have taken action on the decision or the disposition. "An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." Thornton v. Snyder, 428 F.3d 690, 694 (7th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)); see also Perez, 182 F.3d 532, 536 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try."). Because the plaintiff did not appeal the conduct report decision, he has not exhausted his equal protection claims against Sabish, Osgood and Doying or his retaliation claims against Briggs and Sabish related to the conduct report. The court will dismiss those claims without prejudice.

Regarding the plaintiff's retaliation claim against Sabish for having the plaintiff fired from his job, it is undisputed that the plaintiff did not file an administrative complaint raising that issue. (Complaint KMCI-2021-17063 only raises the issue that the plaintiff's work pay was incorrect.) The plaintiff contends that this claim was exhausted because the claim would require evaluation of KMCI-2021-13597 and, according to the plaintiff, Schmidt told him that "all of the claims were exhausted once [the plaintiff] exhausted the remedies for KMCI-2021-13597." Dkt. No. 39 at 15. The plaintiff appears to rely on the rejection of complaints KMCI-2021-14300 and KMCI-2021-14750

as previously addressed by complaint KMCI-2021-13597 for his contention that if he had filed a complaint alleging that Sabish had retaliated against him by having him fired from his job, that also would have been rejected as previously addressed by KMCI-2021-13597. The plaintiff also says that on September 28, 2021, Schmidt told him that he did not have to keep filing complaints related to his original complaint about Briggs (KMCI-2021-13597) and that once he had exhausted his complaint against Briggs all his issues determined to be previously addressed would be exhausted. But the issue of Sabish having the plaintiff fired from his job in retaliation based on his complaints about Briggs and Sabish was not determined to have been previously addressed. The plaintiff assumes that the ICE would have rejected a complaint raising that issue but as stated above, there is no futility exception to the PLRA's exhaustion requirement. See Perez, 182 F.3d at 536 ("No one can know whether administrative requests will be futile; the only way to find out is to try."). The plaintiff did not file an administrative complaint regarding his claim that Sabish retaliated against him by having him fired from his job. He did not exhaust his administrative remedies, and the court will grant the defendants' motion for summary judgment as to this claim.

In sum, the defendants have established that the plaintiff failed to exhaust administrative remedies regarding the following claims: (1) his equal protection claims against Sabish, Osgood and Doying for allegedly giving the plaintiff a conduct report and/or finding him guilty of disobeying orders for not properly wearing his mask, but failing to enforce the policy against White

incarcerated individuals who did not properly wear their masks; (2) his retaliation claim against Briggs and Sabish based on allegations that they issued the plaintiff a conduct report in retaliation for his complaint against Briggs and statements in the complaint that he previously had complained to Sabish about Briggs's discriminatory conduct; and (3) his retaliation claim against Sabish for allegedly having the plaintiff fired from his job based on his complaints against Briggs and Sabish. The court will grant the defendants' motion for partial summary judgment on exhaustion grounds and dismiss these claims without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

Two claims remain: (1) an equal protection claim against Briggs for allegedly discriminating against the plaintiff by enforcing the mask policy against him but not against White incarcerated individuals; and (2) a state law defamation of character claim against Sabish. Because no claims remain against Doying and Osgood, the court will dismiss those defendants.

## III. Conclusion

The court **GRANTS** the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 33.

The court **DISMISSES** defendants Doying and Osgood.

The court **GRANTS** the plaintiff's motion to identify representative of the Estate of Allison Briggs and **DENIES** the plaintiff's motion to remove Allison Briggs from defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 49.

22

The court **ORDERS** the clerk's office to add Attorney David A. Van de Water to the docket as the representative for defendant Allison Briggs's estate.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint (Dkt. No. 1), the screening order (Dkt. No. 7), the suggestion of death as to Allison Briggs (Dkt. No. 11), the plaintiff's motion to substitute (Dkt. No. 13), the court's order granting the motion to substitute (Dkt. No. 48) and this order on Attorney Van de Water under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** David A. Van de Water to file a responsive pleading to the complaint. The court will set new case deadlines after Van de Water files a responsive pleading to the complaint.

Dated in Milwaukee, Wisconsin this 31st day of March, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**