UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES LEWIS,

Plaintiff,

v.                                                    Case No. 23-cv-1210-pp

CORY SABISH
and ESTATE OF ALLISON BRIGGS,

Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(DKT. NO. 69), GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 73), DENYING PLAINTIFF'S MOTION FOR
SANCTIONS (DKT. NO. 81), GRANTING PLAINTIFF'S MOTION FOR
DEFENDANTS TO USE ONLY VIDEO EVIDENCE PROVIDED TO PLAINTIFF
(DKT. NO. 81) AND DISMISSING CASE**

Plaintiff James Lewis, who is incarcerated at Kettle Moraine Correctional

Institution and is representing himself, filed this case alleging that the

defendants violated his civil rights. Dkt. No. 1. His claims stem from former

defendant Allison Briggs[1] allegedly telling him to put on his mask, which had

been hanging from one ear, to comply with then-applicable COVID-19 protocol.

The plaintiff has filed a motion for summary judgment, dkt. no. 69, and the

defendants filed a cross-motion for summary judgment, dkt. no. 73. The

plaintiff also filed a motion for a spoliation sanction and to require the

defendants to use only the video evidence provided to plaintiff. Dkt. No. 81.

This order addresses all pending motions.

_____

[1] Allison Briggs died on April 8, 2024, dkt. no. 11, and the Estate of Allison
Briggs has been substituted for her as a defendant, dkt. no. 56 at 23.

1

# I.     Procedural Background

When the court screened the complaint, it allowed the plaintiff to proceed on the following claims: (1) an equal protection claim against Allison Briggs based on allegations that she discriminated against him by enforcing the prison's mask policy against him and other Black incarcerated individuals but not against White incarcerated individuals; (2) equal protection claims against defendants Cory Sabish, Christopher Osgood and Denice Doying for allegedly giving the plaintiff a conduct report and/or finding him guilty of disobeying orders for not properly wearing his mask, but failing to enforce the policy against White incarcerated individuals who did not properly wear their masks; (3) retaliation claims against Briggs and Sabish based on allegations that they issued the plaintiff the conduct report in retaliation for his complaint against Briggs and statements in the complaint that he previously had complained to Sabish about Briggs's discriminatory conduct; (4) a retaliation claim against Sabish for allegedly having the plaintiff fired from his job based on his complaints against Briggs and Sabish; and (5) a Wisconsin state law claim for defamation of character against Sabish. Dkt. No. 7 at 9-10.

On March 31, 2025, the court granted the defendants' motion for partial summary judgment on exhaustion grounds, dismissing several claims and defendants. Dkt. No. 56. Two claims remain: (1) an equal protection claim against the Estate of Allison Briggs (Briggs) for allegedly discriminating against the plaintiff by enforcing the mask policy against him but not against White

incarcerated individuals and (2) a state law defamation-of-character claim against Sabish. <u>Id.</u> at 22.

## II.    Facts[2]

The plaintiff was incarcerated at Kettle Moraine Correctional Institution during the events described in the complaint. Dkt. No. 71 at ¶1. On September 7, 2021, Kettle Moraine was under a COVID-19 protocol requiring staff and incarcerated individuals to wear facemasks over their nose and mouth. <u>Id.</u> at ¶2; Dkt. No. 75 at ¶3. That morning at around 6:15 a.m., the plaintiff was standing against the wall waiting to turn in his laundry and his mask was hanging from one ear. Dkt. No. 71 at ¶5; Dkt. No. 75 at ¶4.

The parties dispute whether Briggs told only the plaintiff to put his mask on correctly or whether she told the plaintiff and other Black incarcerated persons to do it. And although the parties agree that other White incarcerated individuals were not wearing their masks properly in that the masks covered only their mouths but not their noses, the parties dispute whether any other White incarcerated individuals were not wearing their masks over their faces at all.

According to the plaintiff, Briggs told several Black incarcerated individuals that they needed to put their facemasks on properly. Dkt. No. 71 at ¶6. The plaintiff states that as he put his mask on correctly, "he pointed to all the white inmates who were not wearing either wearing their mask improperly

_____

[2] The court includes only material, properly supported facts in this section. <u>See</u> Fed. R. Civ. P. 56(c).

3

[sic], or not wearing it at all." Id. According to the defendants, the plaintiff was the only incarcerated individual whom Briggs asked to fix his mask because he was the only one who did not have a mask on his face. Dkt. No. 75 at ¶6. It is undisputed that as the plaintiff put his mask on correctly, he pointed to all the White incarcerated persons who were not wearing their masks properly. Dkt. No. 71 at ¶6; Dkt No. 75 at ¶¶7-8.

Later that day, the plaintiff submitted an inmate complaint stating that his issue was Briggs showing favoritism to Whites over incarcerated persons of color and that "CPS Sabish has been told numerous times and his only response is 'I'll talk to her.'" Dkt. No. 71 at ¶33. The plaintiff's inmate complaint contains the following details:

> In the morning line to turn in laundry CO Briggs repeatedly told blacks—including me—that we need to put our face masks on properly. I told her to look to her left and work her way around as NO WHITE PERSON IN LINE WAS WEARING THEIR MASK PROPERLY. Those include Inmate Schmalling who was sitting next to her. Inmate Campbell who was sitting next to him. Inmates Myers, Groh and several others— ALL WHITE —who were standing right in front of her. And she said absolutely NOTHING to them. This is yet another of the many times and many ways in which she treats those of color different from whites. CHECK THE CAMERA FROM 6:13-6:25AM.

Dkt. No. 71 at ¶10; Dkt. No. 75 at ¶¶9-12.

The institution complaint examiner (ICE) contacted Sabish, the unit supervisor, for assistance investigating the plaintiff's inmate complaint. Dkt. No. 75 at ¶¶14-15. According to the defendants, Sabish reviewed the camera footage the plaintiff had referenced in his complaint and noted that everyone in line was wearing a mask except the plaintiff, who had his mask hanging from

4

one ear. Id. at ¶16. The plaintiff disputes that he was the only one not wearing his mask. Dkt. No. 87 at ¶16. He states that in the video, at least two White incarcerated individuals can be seen not wearing masks on their faces. Id.

As part of his review, Sabish asked Briggs about the plaintiff's accusations in his inmate complaint. Dkt. No. 75 at ¶17. Briggs told Sabish that the plaintiff was the only person she addressed regarding his mask because he was the only incarcerated individual not wearing one. Id. at ¶18.

Two days after the incident, on September 9, 2021, correctional staff placed the plaintiff in segregation on temporary lockup status, and when he asked why he was there he was told that it was for lying about staff. Dkt. No. 71 at ¶¶11-12. The plaintiff was asked if he wanted to give a statement, and he wrote:

> I never lied on staff. I said she told me and another Black inmate to put on our masks while she said nothing to the White inmates—Schmalling who was doing laundry, Campbell who was sitting in a shower chair; and several others who were in line.

Id. at ¶13.

A few days later, Sabish issued the plaintiff a conduct report charging him with lying about staff. Dkt. No. 71 at ¶14. The conduct report states:

> On September 9th, I received information from an ICE follow up about [the plaintiff] feeling that there is favoritism of whites on the unit over color. [The plaintiff] provided a specific time when this allegedly happened which is September 7th, 2021 between 6:15am to 6:25am. [The plaintiff] stated in his ICE that CO Briggs repeatedly told blacks, including him that they need to wear their masks properly. [The plaintiff] said in his ICE that there were no white persons wearing their masks properly.
>
> Upon reviewing the cameras at the designated time [the plaintiff] stated, I saw everyone wearing a mask except [the plaintiff], who had

5

his mask hanging from one of his ears. As he approached CO Briggs he can be seen putting his mask on. Officer Briggs stated that she only addressed [the plaintiff] as he was the only PIOC [person in our custody] not wearing a mask. PIOCs are to wear masks when inside a building when they are out of their cell.

Based on the information and video reviewed [the plaintiff] is lying about an employee which can affect not only the employee's credibility but also their integrity.

Id.

The plaintiff asked that two other incarcerated individuals, Schmalling and Myers, along with Sabish, be present at his hearing. Dkt. No. 71 at ¶16. The plaintiff also requested a copy of DOC 303.32—the rule for lying about an employee—and a copy of the camera video for September 7, 2021 from 6:10 a.m. to 6:30 a.m. Id. The Division of Adult Institutions (DAI) DOC 303 Handbook explains §DOC 303.32, Lying about an employee as: "Any inmate who makes a false written or oral statement about an employee *outside* the complaint review system under ch. DOC 310 is guilty of lying about an employee." Dkt. No. 71 at ¶17 (emphasis added). Sabish's conduct report was based upon statements the plaintiff had made *within* the complaint review system. Id. at ¶18 (emphasis added).

On September 30, 2021, the plaintiff had a disciplinary hearing on his conduct report. Dkt. No. 71 at ¶20. In his statement to the hearing officers, the plaintiff repeated the actions of Briggs and pointed out that §DOC 303.32 did not allow for him to be found guilty of lying about an employee because his statements were made within the Inmate Complaint Review System (ICRS). Id. at ¶21. The plaintiff said that on September 7, 2021, his mask was hanging

6

from his ear when Briggs asked him to wear it properly. Dkt. No. 75 at ¶26. He also told the hearing officer that this was the first time Briggs had spoken to him about not wearing his mask outside of his cell. Id. at ¶27.

Incarcerated person Schmalling, who was called as a witness, said he was wearing the mask over his mouth. Dkt. No. 71 at ¶22; Dkt. No. 76 at ¶22. Schmalling answered "no" to the plaintiff's question, "When I point out to C.O. Briggs all the persons who were not wearing their masks correctly—including you—did she ever ask any of you to put on your masks correctly." Id. After Schmalling left the room incarcerated person Myers entered. Dkt. No. 71 at ¶23. Myers testified that he and other incarcerated individuals were not wearing masks correctly and that "Briggs didn't tell anyone else to wear their masks properly except for [the plaintiff]." Dkt. No. 76 at ¶23.

The plaintiff then was asked to leave the room to allow the hearing officers to view the video footage. Dkt. No. 71 at ¶26. A few minutes later, he was called back into the room and told that he would be found not guilty of lying about an employee. Id. In so finding, the hearing officer stated:

> I considered the inmate's statement, advocates statement, witness statement, along with the video evidence and conduct report. [The plaintiff] is not guilty of 303.32 as stated in the conduct report due to reviewing the video evidence and witnessing other inmates in the immediate area not wearing their masks appropriately.
>
> He is guilty of 303.28(3) as stated in the conduct report [the plaintiff] was not wearing his mask properly and when questioned about this during the hearing [the plaintiff] openly admitted to wearing his mask not in the manner that it was intended. [The plaintiff's] witness collaborated [sic] what he had said confirming that no other inmates were addressed about their masks. I find the report writer more credible as they have less to gain from the outcome to the report

than [the plaintiff] and the report writer has been credible in the past.

Id. at ¶27; Dkt. No. 78-1 at 5. The plaintiff was told that he would receive a conduct report finding him guilty of disobeying orders. Dkt. No. 71 at ¶29. When the plaintiff asked what order he had disobeyed, Officer Doying responded that there was a policy that incarcerated individuals must properly wear masks at all times when out of their cells, and that the plaintiff had admitted that he was not wearing his mask properly. Id. at ¶31. The plaintiff received a disposition of sixteen days' room confinement for disobeying orders. Id. at ¶38; Dkt. No. 75 at ¶32. On October 19, 2021, the Warden of Kettle Moraine reversed the finding that the plaintiff was guilty of disobeying orders and dismissed the conduct report. Dkt. No. 71 at ¶39; Dkt. No. 75 at ¶34.

### III. Analysis

#### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.     Discussion

The plaintiff contends that he is entitled to summary judgment on his equal protection claim and that the undisputed facts establish every element of an equal protection claim. Dkt. No. 70 at 5. According to the plaintiff, he—a Black incarcerated individual—and numerous White incarcerated persons were in the laundry area at the same time and were not wearing their masks appropriately. Id. He says that Briggs "disciplined" him and other Black incarcerated persons but said nothing to the White individuals "committing the same violation." Id. The plaintiff asserts that discriminatory intent can be inferred from the "stark pattern of disparate treatment." Id. He says that this was not an isolated incident, because he previously had complained to the sergeant and Sabish about "Briggs's favoritism." Id.

9

The plaintiff also contends that he is entitled to summary judgment on his state law defamation claim against Sabish and that the undisputed facts establish every element of that claim. Id. at 6. First, he says that Sabish made a false statement when Sabish wrote in the conduct report that he "saw everyone wearing a mask except [the plaintiff]" and that the plaintiff therefore was "lying about an employee." Id. He says that Sabish's statement was a malicious mischaracterization of the facts designed to secure a finding of guilt against the plaintiff. Id. Second, the plaintiff says that the statement was communicated to a third party because it was communicated in writing to Doying and the disciplinary hearing officers, and it became part of the plaintiff's official prison record. Id. at 7. Third, the plaintiff says that the statement was harmful because it "was the direct cause of Plaintiff being placed in segregation for 21 days, causing the loss of family contact and other deprivations." Id.

In their motion for summary judgment, the defendants begin by arguing that because of Brigg's untimely death, they should be allowed to rely on an email she sent to defense counsel as part of this litigation. Dkt. No. 74 at 9. On April 1, 2024, Briggs had sent an email to her legal team addressing paragraphs 12-16 of the plaintiff's complaint. Dkt. No. 75 at ¶39. In responding to paragraph 13 of the complaint, Briggs stated: "13-deny. Inmate Lewis was the only inmate with his mask not on his face at the time I addressed him and asked him to fix his mask." Id. at ¶40. The defendants contend that email is admissible under Federal Rule of Evidence 807 (the residual exception to the

hearsay rule). Dkt. No. 74 at 9. They offer this statement to show that the plaintiff was the only incarcerated person not wearing his mask on his face and that he was the only incarcerated person whom Briggs instructed to fix his mask. Id. at 10.

Next, Briggs contends that she is entitled to summary judgment on the plaintiff's equal protection claim because the plaintiff's "allegations raise a de minimis imposition for which the Constitution is not concerned." Id. at 12. She asserts that the plaintiff was not similarly situated to the White incarcerated individuals that he complains were not told to properly wear their masks, and that the plaintiff has presented no evidence of a discriminatory purpose. Id. And she argues that she is entitled to a grant of summary judgment on qualified immunity grounds. Id. at 16-19.

Regarding the plaintiff's defamation claim, the defendants contend that Sabish is entitled to summary judgment because Sabish's statements in the conduct report were not false, that Sabish's communication was privileged and did not harm the plaintiff's reputation and that Sabish has discretionary immunity for his actions. Id. at 20-22.

    1. *Equal Protection Claim*

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). To avoid summary judgment on his equal protection claim, the plaintiff must "come forward with evidence that would allow a reasonable

jury to infer that the defendants intentionally treated him differently because of his race." Id. "[T]he standard is whether all the evidence 'would permit a reasonable factfinder to conclude that plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the . . . adverse . . . action.'" Id. at 720. "If the disciplinary decisions [of the defendants] were motivated by race, that would violate the Equal Protection Clause." Id. (citing Brown v. Budz, 398 F.3d 904, 916-17 (7th Cir. 2005); Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("A policy of deliberate racial segregation of prisoners would raise serious questions under the equal protection clause of the Fourteenth Amendment.")).

The plaintiff must show that Briggs's directive to him to put his mask on "had a discriminatory effect" and that Briggs was "motivated by a discriminatory purpose." Alston v. City of Madison, 853 F.3d 901, 906 (7th Cir. 2017) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 635-36 (7th Cir. 2001)). To prove discriminatory effect, the plaintiff must show that he was a member of a protected class and that he was treated differently from a similarly situated member of an unprotected class. Id. (citing Chavez, 251 F.3d at 636). "[D]iscriminatory purpose requires a defendant to have selected 'a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group.'" Id. at 907 (quoting Chavez, 251 F.3d at 645).

It is undisputed that while he was standing in line on September 7, 2021, the plaintiff's mask was hanging from one ear in violation of Kettle Moraine's COVID-19 protocol. Briggs told the plaintiff to put his mask on, and the plaintiff complied. The plaintiff says that Briggs told one or more other

Black incarcerated individuals to put their masks on properly, but that she did not tell any White incarcerated individuals to put their masks on, even after the plaintiff pointed out to Briggs that other White incarcerated individuals were not wearing their masks properly in that their masks were covering only their mouths. The parties dispute whether any White incarcerated individuals, like the plaintiff, were not wearing their masks over their faces at all.

The defendants submitted a video of the incident, but the quality is poor. The court cannot determine from the video which individual is the plaintiff and the extent to which the incarcerated individuals were wearing their masks. The court will not consider the video in resolving the summary judgment motions.

For the purpose of summary judgment, the court assumes that in addition to telling the plaintiff to put his mask on, Briggs also told other Black incarcerated individuals to put their masks on properly. The court also assumes that other White incarcerated individuals were not properly wearing their masks, including not wearing them over their faces. But even construing these disputed facts in the plaintiff's favor, his equal protection claim fails because Briggs's one-time directive to him to put his mask on does not amount to a constitutional violation. Because the court is construing these facts in the plaintiff's favor, it need not determine whether Briggs's email is admissible.

Viable equal protection claims require that discriminatory conduct includes an adverse impact or action. See Lisle, 933 F.3d at 719; Alston, 853 F.3d at 906. Briggs told the plaintiff to put his mask on, and he did. She did not discipline the plaintiff, threaten to discipline him or take any other adverse

13

action against him. Briggs's one-time directive to the plaintiff to put his mask on over his face in compliance with prison protocol did not violate the plaintiff's constitutional rights. Cf. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (the use of racially derogatory language directed at an incarcerated individual does not deny him equal protection of the law); see also Evans v. Taylor, Case No. 21-CV-550, 2022 WL 44345, at *2 (E.D. Wis. Jan. 5, 2022) (correctional teacher asking to call Black students the n-word and telling them they should be "made to sit on the back of the bus like the old days" does not state an equal protection claim); McFarland v. Wachs, Case No. 05-CV-376, 2005 WL 1654043, at *3 (N.D. Ind. July 11, 2005) (plaintiff who alleged that his prison job supervisor told him to "shut his mouth" without saying the same to Europeans who were talking did not state claim for equal protection claim for racial discrimination because allegation was a *de minimis* level of imposition with which the Constitution is not concerned).

The plaintiff contends that the fact he previously had complained about Briggs favoring Whites shows that she discriminated against him. But the fact the plaintiff complained about Briggs favoring Whites does not establish that she did. See Minority Police Officers Ass'n v. South Bend, 801 F.2d 964, 967 (7th Cir. 1986) (conclusory allegations of racial bias do not show discriminatory intent).

A reasonable factfinder could not conclude that Briggs violated the plaintiff's constitutional rights. The court will deny the plaintiff's motion for

14

summary judgment and grant the defendants' motion for summary judgment as to the plaintiff's equal protection claim against Briggs.[3]

## 2. *State Law Defamation Claim*

To establish defamation, the plaintiff must establish: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and (3) that is unprivileged and tends to harm one's reputation. <u>Torgerson v. Journal/Sentinel, Inc.</u>, 210 Wis. 2d 524, 534 (Wis. 1997). The plaintiff contends that he meets all the elements of a defamation claim; the defendants contend that the plaintiff cannot prove that Sabish made a false statement, that the communication was unprivileged or that it harmed the plaintiff's reputation. Dkt. No. 74 at 19. They also contend that Sabish is entitled to discretionary immunity.

The plaintiff claims that Sabish's statement in the conduct report that when he viewed the video of the incident he "saw everyone wearing a mask except [the plaintiff]" and that the plaintiff was therefore "lying about an employee" was false. According to the plaintiff, Sabish deliberately mischaracterized the plaintiff's statement in his inmate complaint that White incarcerated individuals were not wearing their masks "properly." He says that the video shows that other individuals were not correctly wearing their masks. In the conduct report, Sabish said that upon viewing the video, he saw the

---

[3] Because it is clear that the plaintiff has not suffered a constitutional injury, the court need not consider Briggs's claim that she is entitled to summary judgment based on qualified immunity. <u>See</u> <u>Akande v. Grounds</u>, 555 F.3d 586, 590 (7th Cir. 2009) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

plaintiff wearing his mask hanging from one ear, and he said that other incarcerated persons were not wearing their masks properly. This seems consistent with the plaintiff's assertion that other White incarcerated individuals were not wearing their masks "properly." But the plaintiff also says that, like himself, some White incarcerated individuals were not wearing their masks at all. As the court has explained, it cannot tell from viewing the video whether other incarcerated individuals were not wearing their masks. That means that the court cannot conclude from the video that Sabish lied when he said in the conduct report that upon viewing the video, he did not see other incarcerated persons not wearing their masks.

In his brief in opposition to the defendants' motion for summary judgment, the plaintiff also argues that "Sabish knew [the plaintiff] was not guilty of DOC 303.32 Lying about an employee, because the statements were made within the ICRS." Dkt. No. 86 at 20. The plaintiff alleges that when, in the conduct report, Sabish accused the plaintiff of violating §303.32, Sabish knew he was making a false statement, because he knew that the plaintiff had allegedly lied about the employee in an inmate complaint—that is, within the inmate complaint review system.

It is true that in the section of Sabish's conduct report in which he was asked to list the code violations that he accused the plaintiff of committing, Sabish wrote, "DOC 303.32," which he characterized as "Lying about an employee," and "DOC 303.28," which he characterized as "Disobeying orders." Dkt. No. 78-1 at 1. Section 303.32 is titled "Lying about an employee," and it

16

*does* state that "[a]ny inmate who makes a false written or oral statement about an employee outside the complaint review system . . . is guilty of lying about an employee." So the plaintiff is correct that Sabish knew that he made his allegedly false statement (that there were no White persons wearing their masks properly) in an inmate complaint; Sabish said as much, stating in the conduct report that the plaintiff "said in his ICE that there were no white person wearing their masks properly." Dkt. No. 78-1 at 1.

It seems likely that Sabish cited §303.32—the section that prohibits incarcerated persons from lying about employees *outside* the inmate complaint system—in error. DOC §303.31, which immediately precedes §303.32, says that "[a]ny inmate who makes a false written or oral statement which may affect the orderly operation, safety or security of the institution is guilty of lying." Perhaps Sabish meant to cite §303.31. Or perhaps, as the defendants speculate, he meant to cite §310.16(8)(d) ("The confidentiality of the complaint process does not prohibit disciplinary action under ch. DOC 303 for misuse of the ICRS. Misuse of the ICRS includes complaints that are intended to . . . (d) Erode the integrity or credibility of employees by knowingly providing false statements.").

But even if Sabish deliberately cited the wrong code violation, the plaintiff has not demonstrated that Sabish's statements harmed his reputation. As the defendants emphasize, he was found not guilty of lying about an employee.

17

Finally, there is a form of common law immunity granted to state employees like Sabish; it is sometimes called "governmental immunity," "public officer immunity," "public employee immunity" or "discretionary act immunity." Pries v. McMillon, 314 Wis. 2d 706, 709 n.2 (Wis. Ct. App. 2008). "The general rule, grounded in common law, is that 'state employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties.'" Id. at 716 (quoting Umansky v. ABC Ins. Co., 313 Wis. 2d 445, 458 (Wis. Ct. App. 2008). "When a state employee asserts discretionary act immunity as a defense, the analysis 'assumes negligence and focuses on whether the action or inaction upon which liability is premised is entitled to immunity.'" Id. "Wisconsin has recognized exceptions to discretionary act immunity that generally apply where state employees assert immunity under the common law . . . ." Id. There are four such exceptions: "(1) ministerial duties imposed by law; (2) duties to address a known danger; (3) actions involving professional discretion; and (4) actions that are malicious, willful and intentional." Id. at 716-17 (citing Scott v. Savers Prop. & Cas. Ins. Co., 262 Wis. 2d 127, 139 (Wis. 2003)).

None of the four exceptions to discretionary act immunity apply. Sabish's decision to issue a conduct report, and his decisions about what to say in that report, were discretionary—in other words, he was not required by law to issue a report or say what he did in it. His issuance of the conduct report was not a duty required to address a known danger, nor was it an action involving professional discretion (such as a doctor exercising medical discretion).

18

Finally, the plaintiff has not shown that Sabish's actions were "malicious, willful and intentional." In the conduct report, Sabish said that the plaintiff had stated in his inmate complaint that Briggs "repeatedly told blacks, including him that they need to wear there masks properly," and that the plaintiff had said in his complaint that "there were no white person [sic] wearing their masks properly." Dkt. No. 78-1 at 1. According to the plaintiff, Sabish deliberately mischaracterized the plaintiff's statement in his inmate complaint that White incarcerated individuals were not wearing their masks "properly." But that is exactly what the plaintiff stated in his complaint—that he told Briggs to look around because "NO WHITE PERSON IN LINE was WEARING THEIR MASKS PROPERLY." Dkt. No. 72-1 at 1. It is not clear how Sabish could have "mischaracterized" that statement by repeating it.

Sabish also wrote in the conduct report that upon viewing the video, he "saw everyone wearing a mask except [the plaintiff], who had his mask hanging from one of his ears." Dkt. No. 78-1 at 1. The plaintiff contends that Sabish lied when he said that the video showed that everyone was wearing a mask except the plaintiff. He says that the video shows that other individuals were not properly wearing their masks. Again, the court cannot tell from viewing the video if any other incarcerated individuals were not wearing their masks at all. The plaintiff has not established that Sabish maliciously, willfully and intentionally lied when he said in the conduct report that upon viewing the video, he saw everyone except the plaintiff wearing a mask. Because the plaintiff's evidence does not prove the elements of a defamation claim, and

19

because Sabish has discretionary act immunity, the court will grant the defendants' motion for summary judgment as to the plaintiff's defamation claim.

**IV.  Plaintiff's Motion for Sanction and to Require Defendants to Use Only the Video Evidence Provided to Plaintiff (Dkt. No. 81)**

The plaintiff contends that the court should sanction the defendants for refusing to provide him with the video of the event described in his complaint— video recorded on September 7, 2021 from 6:13 a.m. to 6:25 a.m. Dkt. No. 81 at 2. He states that the video the defendants provided to him during discovery was only one minute twenty-three seconds long, that it was neither time or date-stamped and that he could not zoom in to view faces. Id. The plaintiff says that this video, which appears to be the same one the defendants filed with the court, is missing over thirteen minutes of footage. Id. at 2. The plaintiff states that the missing video would show that there were, in fact, White incarcerated individuals not wearing their masks at all, contrary to the defendants' assertion in their motion for summary judgment. Id. at 3. The plaintiff contends that the defendants should be sanctioned for not providing the full video footage and that the court should allow the defendants to use only the video footage they presented to him. Id.

The defendants respond that the court should deny the motion because the plaintiff has not presented evidence that the defendants were responsible for video preservation or that video was destroyed in bad faith. Dkt. No. 84 at 1-2. They state that the full video was not preserved because the plaintiff never

asked the prison to preserve it. Id. at 2. The defendants also confirm that the video they filed with the court is the same video they sent to the plaintiff. Id.

The plaintiff has not established that he requested the entire video be preserved. Dkt. No. 85 at ¶¶13, 15-16, 18-20. And even if he had made such a request, the *defendants* were not the ones responsible for preserving it. Id. at ¶22. That would have been the prison's responsibility. The plaintiff claims that the entire video would have shown that White incarcerated individuals were not wearing their masks over their faces. But the court has assumed that fact for the purpose of summary judgment. Sanctions are not warranted, and the court will deny the plaintiff's motion for sanctions.

Because the video the plaintiff viewed is the same video the defendants filed with the court, the court will grant the plaintiff's motion to require the defendants to use only the video evidence that was provided to him.

## V.    Conclusion

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 69.

The court **GRANTS** the defendants' cross-motion for summary judgment. Dkt. No. 73.

The court **DENIES** the plaintiff's motion for spoliation sanction. Dkt. No. 81.

The court **GRANTS** the plaintiff's motion for the defendants to use only the video evidence provided to plaintiff. Dkt. No. 81.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. <u>See</u> Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. <u>See</u> Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. <u>See</u> Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. <u>Id.</u>

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year

22

after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 4th day of March, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**